Case number 20-1791, Pao Tatneft v. Ukraine, care of Mr. Pavel Petrenko, minister of justice, appellants. Ms. Kostitska for the appellant, Mr. McDonald for the appellee. Good morning, counsel. Ms. Kostitska, please proceed when you're ready. Good morning. Your Honor, as may it please the court, in the interest of time, I will address two grounds for appeal, illegality and firm nonconvenience, and answer any questions you may have regarding the two other grounds, arbitrator bias and excess of subject matter jurisdiction. Illegality. The award that Tatneft seeks to enforce is based on illegality. Enforcement should be denied under Article 5 of the New York Convention, first, due to the limited scope of Ukraine's offer to arbitrate disputes relating to legal investments under Article 5.1c, and second, due to the American public policy against illegality under Article 5.2b. If the vast majority of Tatneft's claims is for the loss of its indirect shareholding of Tatneft, a Ukrainian company, the indirect shareholding was acquired using promissory notes, essentially promises to pay. Ukrainian law prohibited capitalizing a company with promissory notes. The public policy reasons behind the prohibition were similar to those of the D.C. Code, such as promissory notes often proved to be uncollectible. If promissory notes were counted as part of the stated capital, shareholders and creditors would be misled or defrauded, and paying for shares with promissory notes dilutes the equity of the other shareholders. It also causes the company to forgo other sources of capital. In this case, Amherst and C Group, foreign-incorporated shell companies with concealed beneficial ownership, squeezed their way into UkrTatnafta to form a voting alliance with Tatneft, and these shell companies were forced to pay $65.8 million, and only $3 million were ever collected. After the illegality of the shell purchase... Excuse me. To the implications of this argument, would it mean that any time an award is thought to be in violation of foreign law, that it implicates the public policy exception? Your Honor, the illegality argument in this case implicates two provisions of the New York Act. The first one has to do with the scope of the offer to arbitrate, because the BAT between Russia and Ukraine specifically provides that disputes that can be arbitrated on the BAT have to arise out of legal investments. So the legality requirement is encompassed in the BAT, which is part of the agreement to arbitrate, and which defines the scope of the offer to arbitrate. As far as the public policy exception is concerned, under Article 5.2b, not any illegality would implicate the public policy exception, but any illegality that is not trivial and that raises the type of concerns that I have just described will certainly come within the purview of the public policy exception, Your Honor. In the district court proceeding, it was uncontested that disputes relating to illegal investments are outside the scope of Ukraine's offer to arbitrate, in the meaning of Article 5.1c of the New York Convention. And it was also undisputed that the United States has a public policy against illegality, in the meaning of Article 5.2b of the New York Convention. TATNEV did not even attempt to defend the legality of the shareholder's purchase using promissory notes in these proceedings, yet the district court did not evaluate Ukraine's concern with the illegality of the share purchase using promissory notes, and did not draw Article 5.2 consequences from it. The district court's order should be reversed, and enforcement should be denied for illegality under Article 5.2. Turning now to forum non-convenience, this case has no connection to the United States, being a contracting party to the New York Convention. The locus of the dispute is in Ukraine. The witnesses, experts, and assets are in Ukraine. The dispute involves complex issues of Ukrainian law, and also Russian and Soviet law. Illegality of the share purchase is central to this dispute. TATNEV has not identified any assets of Ukraine. We have some decisions that seem to stand for the proposition that forum non-convenience is not a basis on which there's relief in the context of a proceeding to enforce an arbitral award. Your Honor, let us look at the last footnote of the forum non-convenience section of TMR. This is the decision to which you refer. Yeah, TMR and others that echo it. And the last footnote of the TMR decision expressly carves out the question as to whether the forum non-convenience arguments are available or unavailable in the New York Convention confirmation proceedings from its determination. And I agree. Accordingly, we do not consider TMR's alternative contention that, contrary to the Second Circuit's decision in Monegasque v. Naftogaz of Ukraine, the doctrine has no place in an action to enforce an arbitral award. So this particular question was specifically carved out from this court's determination. And the holding of Monegasque of the Second Circuit was undisturbed. And in that particular case, the Second Circuit specifically held that forum non-convenience is available as an argument in New York Convention proceedings. And why? Because Article 5 of the New York Convention. On the subject of footnotes, I thought that there was a footnote in Arstelic's decision that says, I think relying on TMR, that says that forum non-convenience is unavailable in the arbitral context. Your Honor, that footnote refers and relies to TMR. And we submit that that affirmed the confirmation of the award on two other grounds. The first one was the subject marriage jurisdiction under the Foreign Ceremonies Act. And the second one had to do with the pendency of some foreign proceedings. So after having affirmed the confirmation on those two grounds in the body, it got to this footnote. So we submit this as dictum. And so the only determination, I think, perhaps, before a clarification is... Your audio is breaking up. When you turn away, your audio is a little bit off. Sorry. Your Honor, and I also would like to draw attention to Article 3 of the New York Convention. And this is the provision specifically that the Second Circuit interpreted. So while holding that defenses and Article 5 are substantive matters, the forum non-convenience argument is procedural in nature. And Article 3 of the New York Convention specifically provides that enforcement has to be conducted and done in accordance with the procedures of the forum. So according to Article 3 of the New York Convention, the forum non-convenience argument remains available in confirmation proceedings. So, Your Honor, this case has no connection to the United States other than the United States being a contracting party to the New York Convention. So why are we here today? Because of forum shopping. We submit that the reason why this Russian company with close ties to the Republic of Tatarstan, a unit of the Russian Federation, dropped a jurisdictional hook in this district is to seek worldwide discovery into the assets of not only Ukraine, but also numerous Ukrainian entities of strategic importance to the nation's welfare. This Russian company is seeking to mobilize far-reaching jurisdictional powers of American courts at times of geopolitical hostilities. This case should be dismissed for forum non-convenience, and I will discuss very, very briefly. First, the district court urged in misconstruing the court's precedent, TMR, to provide for a categorical rule that a foreign forum is always unavailable and adequate in U.S. proceedings to enforce an arbitral award on the New York Convention. And second, such categorical reading of TMR would contravene Supreme Court precedent, particularly Piper and Sinahan. With regard to the first point, TMR does not set for such a categorical rule. It cannot be that a foreign forum is always inadequate and always unavailable in an action to confirm an arbitral award, just because any such action can be characterized as an action to attach property in the United States. Even whereas here, the judgment crater has not identified any property of Ukraine in the district, and has openly admitted that it is unaware of any such property. And as we just discussed, such categorical reading of TMR would be contrary to the last footnote of the forum non-convenience section of that decision. Turning now to the second point, such categorical reading of TMR would contravene Piper and Sinahan. The rule under Piper has always been and remains that an alternative forum can only be inadequate if the remedy that it provides is so clearly inadequate and unsatisfactory that it is no remedy at all. And the examples were that the defendant is not amenable to service of process, or foreign law does not permit litigation of the subject matter of the dispute. And this is a very low standard of adequacy easily satisfied here. And second, I would like to turn to Sinacam, which was decided two years after TMR. It confirmed a continued vitality of the forum non-convenience doctrine, because Sinacam was also an attachment case. And even though the attachment remedy was sought in that case, that did not preclude dismissal on forum non-convenience grounds. I think we have your Sinacam argument from the briefing, and I just want to make sure that my colleagues don't have additional questions for you before we give Mr. MacDonald a chance to respond. No. Okay, thank you, Ms. Kosticka. We'll give you a little time for rebuttal. Mr. MacDonald, we'll hear from you now. Thank you, your honor. May it please the court, I'm Mark MacDonald for the FLE TATNFs. This case, there's a limited issue in front of the district court, which is whether to recognize in the United States, the final award, which was rendered in France and upheld by the courts in France. And as this court and others have recognized, the award debtor Ukraine in a case like this one bears a very heavy burden to overcome the emphatic federal policy in favor of international arbitration awards and upholding our treaty obligations under the correct to reject all of Ukraine's objections to enforcement of this award, even though they've been somewhat of a moving target in the four plus years of this case. And all four of the issues, including the two that counsel discussed just now, that are raised on this appeal, are meritless. And the district court's final judgment affirming the award should be affirmed by this court. So I'll start with the illegality point, which was raised. This is the issue of the way in which Amherst and C group, which were not the claimants in the arbitration, but the way that those companies purchased their shares in the underlying company in the 1990s. And those shares were then purchased subsequently by TATNF, the claimant in the arbitration before the court can even get to the merits of that issue. Ukraine actually waived this argument, and not just once, but twice. The first time was in the arbitration itself, where Ukraine specifically requested that the arbitral tribunal address its own jurisdiction. And it raised four separate jurisdictional arguments, including a very similar argument that TATNF's own purchase of the shares in the company were outside of the bilateral investment treaty of the BIT. Very similar argument that's being raised now with respect to the Amherst and C group shares. But it never raised the argument that it's making to this court today as an argument. As far as that argument comes through the lens of the public policy issue, I'm not sure that it's waivable, because that's not seeking to vindicate the interests of a particular party. That's seeking to vindicate the interests of the United States. I agree with that, Your Honor. So the structure of Article 5 of the New York Convention is that Article 5.1 are the defenses that have to be raised by the party resisting enforcement. And then Article 5.2, including the public policy exception, are sort of available to the recognizing court, if you will. And the public policy argument comes under the latter of those two. You're only talking about 5.1c? That's where I was starting. But I'm happy to talk about Article 5.2. No, I didn't realize the same underlying factual gravamen surfaces both under 5.1c and under public policy. And I just didn't know which branch you were talking about. Yeah, yeah. That's a fair point, Your Honor. So just, okay, let's finish on 5.1c. The waiver was the argument in the district court, because in July of 2017, when TANF had filed a petition in the district court, the district court ordered Ukraine to respond to that petition with its New York Convention defenses, and it did so, raising the arbitrator bias point, which is raised again but wasn't discussed just now. And a separate argument as to this allegation that TANF had acquired the Amherst and Seagroup shares from Amherst and Seagroup to manufacture jurisdiction in the arbitration. That issue is separate from the illegality of Amherst and Seagroup's own purchase of the shares. But anyway, that issue has been abandoned on this appeal. It's not been raised. Even if the issue had not been waived under Article 5.1c, it would not succeed under this court's precedent, including Chevron, and more recently, the Stilix decision that's been discussed today. Here, just as in both of those cases, the bilateral investment treaty incorporated the 1976 arbitration rules, which this court has found constitutes clear and unmistakable evidence that the parties delegated arbitrability questions to the arbitrators. Now, Ukraine made an argument in their brief that, well, that doesn't matter because the arbitrators here didn't make a finding on the illegality points, and so there's nothing to defer to. But with respect, that's because Ukraine, again, did not make this argument in the arbitration and never raised this issue as a jurisdictional defense in the arbitration. And I would point the court to language in the Stilix decision from earlier this year that when the parties delegate arbitrability issues to the arbitrators, it's not merely a question of deference. It's just that the court has actually no power to decide the arbitrability issues. That was a question, if it was going to be a question for the arbitrators alone. So turning, Your Honor, to 5.2b, the public policy aspect of this argument, as this court has said time and again, public policy is a very narrow exception to a New York Convention case seeking recognition of an arbitral board, and it simply does not you know, illegality under Ukrainian corporate law. Obviously, there's no public policy of the United States with respect to that. But okay, let's say, does the United States have a public policy with respect to the purchase of shares with promissory notes? Well, you know, maybe there was some sort of policy in the District of Columbia in the 1980s when the DC Code prohibited that type of because the code has since been revised, and now you can purchase shares in a company with promissory notes. But regardless, that's not the type of public policy that's so well defined and dominant that it can overcome the recognition of a foreign arbitration where that's subject to the New York Convention. The only types of cases where that exception has been successfully invoked involve fraud or other very unique circumstances and nothing like that has been alleged here. And I would also note that the public policy exception is not an occasion for the district court or this court to substitute its fact finding for the arbitration for the arbitration tribunal's fact finding that was the holding of the Supreme Court of the United States in the paperworkers case. So unless any of your honors has any questions on the illegality point, I'll turn to form nonconvenience, although what do you what's your response on the five one D? Tribunal composition? Sure, Your Honor. What standard do you think the district court applied? Well, I think if you look at the district court's opinion that I did actually use all three standards that have been suggested in this case and found that you think the district court said under justifiable doubts, I'm reaching the same conclusion. I think I mean, if you can point me to language, that's what I was trying to figure out, because it really is very unclear what true that the district court said, I'm reaching the same result with respect to all three. Then, then, of course, I'd look at it that way. But I couldn't get myself there. I think I think you're right, Your Honor, that the justifiable doubt standard comes from the answer trial rule. And I don't I think the district court, her decision was that that cannot be the standard. Do you agree with that? I agree with in the following sense. So in this, this court in the Belize bank case found, well, it said, right, that in an arbitrator bias case, as opposed to a question, a case presenting a question as to how the arbitrators were selected, like, you know, maybe there would be an issue under 5.1. d, if Belize dealt with the public policy defense. I agree. But what the court said was in a case like this, where the allegation is that the arbitrators were biased, the only potential grounds under Article five, was not 5.1. d, but 5.2. b, the public policy exception. And, and, and the reason that is, because this is not a question about how the tribunal was composed. There were rules, you know, that wait, so that so then the district court, you want to say, I think you're trying to dance away from it. I'd really like an answer. The district court spent a number of paragraphs, as I remember on this question, and was talking about these different standards. It, I thought the correct answer would be the justifiable doubt is the correct standard. And I'm wondering if you think the district court applied that standard, and you start your first dodge was to say, well, she applied everything. I'm not sure that's right. And if she didn't apply justifiable doubts, can we reach that decision on our own? Or do we have to remand for termination on that? I think Your Honor, there's, there's no dispute of what the facts are. This court can decide it on its own, if it thinks that that's the right standard. If I can just explain for a minute why I don't think that's the right standard. The combination of this court's decision in Belize Bank, and this court's decision in the Republic of Argentina versus AWG, I think explain this. So in AWG, that case was a domestic arbitration case under chapter one of the FAA. So the evident partiality standards applied. Now, interestingly, that case also involved in arbitration governed by the unsuitable rules. But in that case, this court said, even in a chapter one case, it's not the justifiable doubt standard under the unsuitable rules that applies. It's the evident partiality standard under the FAA. Because you don't just get to come into court after you lose an arbitration and say, any sort of footfall under the underlying arbitration rules, it gives me an excuse to undo. Let's see how evident partiality can apply in a case with respect to an international issue. I agree. And it certainly does not. And that was the point in the Belize Bank case, which is to say that in a chapter two case like this one, the evident partiality standard does not apply. And in fact, the standard is tougher. Because this is not a primary jurisdiction case, where the court has more latitude to undo an arbitration award, in fact, has less. And so if Ukraine's argument were accepted here, it would be backwards. You would be in a chapter two international arbitration award case, you would actually have more latitude to undo an arbitration for an allegation like this than you would in a chapter one case. And that just can't be right. Okay. All right. Let me make sure my colleagues don't have additional questions for you, Mr. McDonald. No. Thank you. Thank you, Mr. McDonald. Ms. Kosticka, we'll give you two minutes for your rebuttal, please. Thank you, Your Honor. With regard to the way it was, Ukraine did not waive its illegality argument by not raising it in the arbitration because it did, in fact, argue the illegality point during both the admissibility and jurisdictional phases of the arbitration. So even though the illegality argument was raised, it was not squarely addressed in the award on jurisdictional admissibility. And then most certainly Ukraine raised illegality of the share purchase as a merits defense. And the tribunal did not address this issue and merely stated that a contrary view that a share purchase with promissory notes be illegal was tenable. So stating that something is tenable is not a determination. So this question was never resolved by the tribunal, even though this question was put before it. And we also don't accept that we waived the illegality argument before the district court, because in the argument section of the opposition, not just in the factual background section, in the argument section, we stated in Ukraine's submission, enforcement of the merits award would lend the court's power to run doers, amours and c-group, which unlawfully acquired their shares and overt enough to use promissory notes in violation of Ukraine's law. So this point was argued before the district court and the district court could have and should have drawn article five consequences from this argument, most certainly under the public policy exception. But if more clarity was necessary to brief this argument under the scope exception, then we requested supplemental briefing when additional Ukrainian law evidence became available in the UK proceeding. So had a fuller argumentation been helpful, we offered to provide it. And well, on this particular graph, and opposing counsel raised the point with regard to your honor, I see that my time has expired. May I finish this one point? Yeah, you can finish this one point quickly. Thank you. Yes. So the last point is that we are not foreclosed by Chevron to raise this point, because Chevron does not allow to re-argue admissibility determinate arbitrability determinations that were actually decided by the tribunal. And there is no authority that precludes you from looking into points that have not actually been decided by the tribunal. And there was no factual finding by the tribunal, this particular point, and there is nothing. It hurts me. Okay. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Edwards